UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
KAYVAN KAROON and
KAMRAN KAROON, individually
and as Administrators of the Estate
Of MAJID KAROON, and
MAHIN D. KAROON,

                       Plaintiffs,

           - against -

CREDIT SUISSE GROUP AG and
CREDIT SUISSE AG,

                       Defendants.
------------------------------------------------------------X

Case No. 1:15-cv-04643-JPO

**DECLARATION
OF
<u>ANDREA MEIER</u>**

ANDREA MEIER, pursuant to 28 U.S.C. § 1746, declares:

1. I am a member of the bar of the Canton of Zurich and authorized to practice law before the courts in Switzerland. A copy of my curriculum vitae is attached as Exhibit A. From time to time I have provided legal advice and representation to Credit Suisse Group AG and Credit Suisse AG.

2. I submit this declaration to explain certain aspects of Swiss law. In particular, and as more fully explained below, Swiss law provides that:

    (a) The estate of Mr. Majid Karoon ("Mr. Karoon") alone has standing to bring timely claims relating to a breach of an alleged contract between Mr. Karoon and Bank Leu;

    (b) Mr. Karoon's estate cannot assert a claim in tort with respect to the alleged contract;

   (c) A Swiss court would not allow claims by Plaintiffs in their individual capacities respecting the alleged contract, either as third-party beneficiaries or in tort;

   (d) Plaintiffs' claims are time-barred by Switzerland's statutes of limitation; and

   (e) Swiss courts are generally available to Plaintiffs to the extent they have viable claims.

### A. Summary of Dispute

  3. I have reviewed the complaint in this action. I understand that the Plaintiffs allege they are Mr. Karoon's adult children and former wife. I understand that Plaintiffs further allege that:

   (a) Mr. Karoon was a customer of Bank Leu, a predecessor of one or both of the defendants;

   (b) Mr. Karoon contracted with Bank Leu to establish a Liechtenstein family foundation of which the Plaintiffs would be the "*sole beneficiaries*" "*upon the death of Mr. Karoon*";

   (c) Bank Leu "*failed to properly establish the foundation and properly prepare documents governing it*" to achieve Mr. Karoon's objective;

   (d) Mr. Karoon later caused the transfer of "*$70 to $100 million, and perhaps more*" to the foundation, which funds have been "lost"; and

   (e) As a result, the Plaintiffs have been damaged because funds transferred to the foundation are unavailable either to Mr. Karoon's estate or to Plaintiffs as intended beneficiaries of the foundation.

### B. Based on the Alleged Facts a Swiss Court Would Recognize Only a Contract Claim and Only a Claim Brought on Behalf of Mr. Karoon's Estate

#### 1. Plaintiffs Plead a Breach of a Mandate

4. Switzerland is a civil law jurisdiction for which many legal principles are set forth in statute. The statutes dealing with the relationship underlying Plaintiffs' claims are set out in the Swiss Code of Obligations ("CO").

5. Swiss law provides that the relationship between a bank and its customer is contractual, a breach of which gives rise to a claim in contract. Article 97 para. 1 CO.

6. A Swiss court would consider the alleged contract between Mr. Karoon and Bank Leu regarding the establishment of a foundation to be a mandate agreement. In a mandate relationship, the agent — here, the bank — is liable to the principal — here, Mr. Karoon — for the diligent and faithful performance of the business entrusted to it. Article 398 para. 2 CO.

7. If Bank Leu in fact agreed to the contract that Plaintiffs allege and if Bank Leu in fact failed to discharge its obligations in a diligent and faithful manner, then a Swiss court would allow a timely contract claim for damages by Mr. Karoon (or his estate).

#### 2. Swiss Law Does Not Allow a Tort Claim on Behalf of Mr. Karoon's Estate

8. Swiss law allows a tort claim only where a plaintiff alleges losses resulting from personal injury or damage to property, or alternatively from violation of a specific statutory provision designed to protect a party's assets, in particular criminal provisions such as fraud and the like.

3

9. Plaintiffs have not pled personal injury or damage to property. Rather, they have pled that Bank Leu failed to perform as agreed. Under Swiss law, Plaintiffs' allegations do not support a tort claim, either breach of fiduciary duty, fraud, or negligence.

10. Plaintiffs also have not pled facts that support the alternative predicate for a tort, a violation of Swiss criminal provisions by Bank Leu.

11. Specifically, a Swiss court would reject plaintiff fraud claim based on Plaintiffs' inability to plead and prove the requirements set forth in Article 146 of the Swiss Criminal Code. Art. 146 para. 1 provides as follows:

*Fraud*

*Any person who with a view to securing an unlawful gain for himself or another wilfully induces an erroneous belief in another person by false pretences or concealment of the truth, or wilfully reinforces an erroneous belief, and thus causes that person to act to the prejudice of his or another's financial interests, is liable to a custodial sentence not exceeding five years or to a monetary penalty.*

12. Plaintiffs failed to allege that Bank Leu (i) made any false pretences or concealment of the truth; (ii) thus causing Mr. Karoon to act to the prejudice of his or another's financial interest; and (iii) thereby, acting with the intent to injure and obtain a financial benefit by reason of the fraud.

13. To the contrary, the exhibits produced by Plaintiffs show that Bank Leu did not make any false pretences or concealment of the truth.

14. Plaintiffs complain that Bank Leu mispresented "*to Majid Karoon that upon his death the funds he transferred by him to the Orleon Foundation would be distributed to the*" Plaintiffs, Complaint ¶ 43; but Plaintiffs plead that Bank Leu provided Mr. Karoon with documents that disclosed something else, namely, that Mr. Karoon retained the ability to distribute all funds he might initially cause to be transferred into the foundation, leaving nothing remaining at the time of his death.

4

15.     Thus one document, which Plaintiffs describe as the foundation's by-laws, provides:

> *Mr Majid Karoon shall be the only and sole beneficiary of the Foundation during his lifetime.*
>
> *The Foundation Council shall dispose freely of both income and capital of the Foundation in favor of the first beneficiary.*

Complaint Exhibit F at page 1, section I.

16.     A second document, which Plaintiffs describe as Bank Leu's proposal to Mr. Karoon, provides:

> *2. By-Laws*
>
> *With the Mandate Agreement you will have full power over the foundation council during your lifetime.*
>
> \*\*\*
>
> *4. Mandate Agreement*
>
> *It represents the main legal contract between yourself and the Foundation Council, which is bound to act according to your instructions and on your behalf....*

Complaint Exhibit C at page 2.

17.     Plaintiffs also complain about their lack of access to information about the foundation, Complaint ¶ 45, but Plaintiffs plead that in 1988, a year before the foundation was created, Bank Leu provided Mr. Karoon with a document, which Plaintiffs describe as the foundation's statutes, that disclosed this fact:

> "The Foundation Council is only obligated to give information toward the first beneficiary/ies, whereas the beneficiaries by virtue of succession are excluded from the right to demand information within the meaning of article 932 § PGR."

18.     Plaintiffs complain that they were excluded from the foundation's governing body, the council, Complaint ¶ 46; but Plaintiffs plead that Bank Leu

5

"affirmatively counselled" Mr. Karoon to provide that restriction, *id.*, and provided Mr. Karoon with its rationale:

> " *It is unusual to have beneficiaries elected into the Foundation Council because of tax-reasons and to avoid that the purpose of the Foundation can be changed.*"

Complaint Exhibit C at page 2, section 2.

19. Based on the above a Swiss court would find as a matter of law that Plaintiffs had not pled a claim for false pretenses or concealment. And based on the above described documents and disclosure, a Swiss court would not allow a claim for false pretenses or concealment.

20. Plaintiffs also claim that Bank Leu failed to "*direct* [Mr. Karoon's] *attention*" to this aspect of one of the foundation's organizational documents, the statutes. Compl. ¶11 An alleged failure of Bank Leu to direct the customer's attention to a specific aspect of the statutes does not qualify as false pretenses or concealment of the truth under Swiss law.

21. Furthermore, the Plaintiffs neither allege nor submit any evidence that the documents provided by Bank Leu caused Mr. Karoon to act to the prejudice of his or another's financial interest, i.e. impairing his own assets or assets of another party which are under his control. (*See, e.g.*, Donatsch, Criminal Law, Volume III, 10th ed., 2013, p. 235) Rather, the documents are consistent with the fact that Mr. Karoon had full control over the foundation and his funds during his lifetime. In addition, the Plaintiffs neither allege nor submit any evidence that Bank Leu acted with the intent to injure and obtain a financial benefit by reason of the fraud.

22. As a matter of law, therefore, a Swiss court would not allow Plaintiffs' fraud claim.

23.     Plaintiffs' fiduciary duty claim suffers from additional infirmities. Swiss law would not allow a claim for breach of fiduciary duty on the facts that Plaintiffs allege. A relationship between the customer and the bank is governed by the contractual duties owed by the bank to its customer and vice versa. There is no separate fiduciary relationship providing for additional duties. Thus, Swiss law does not allow for a separate fiduciary claim against the bank. Therefore, Bank Leu is liable to Mr. Karoon for the diligent and faithful performance of the business entrusted to it on the basis of their contractual relationship. Article 398 para. 2 CO.

24.     On the same grounds, there is no basis under Swiss law for a tort claim, either breach of fiduciary duty, negligence, or fraud, by virtue of an alleged breach of duty of care.

25.     As a matter of law, therefore, a Swiss court would not allow any of Plaintiffs' tort claims, either fraud, breach of fiduciary duty, or negligence.

### C.    Plaintiffs, as Individuals, Do Not State a Claim Under Swiss Law

#### 1.    Swiss Law Does Not Allow Plaintiffs as Individuals to Sue in Tort

26.     Each deficiency to the tort claims identified above with respect to Mr. Karoon or his estate applies equally to any tort claim asserted by Plaintiffs in their individual capacities. For those same reasons, a Swiss court would not allow a tort claim by them.

27.     In addition, Swiss law does not recognize a duty owing from Bank Leu to Plaintiffs as potential beneficiaries of the alleged contract to create the foundation. Rather, Swiss law would only recognize a duty owing to Mr. Karoon by virtue of the contract entered into between the Bank and Mr. Karoon (below para. 28). For this separate and additional reason, Swiss law does not allow a claim by Plaintiffs in tort, either breach of fiduciary duty, negligence, or fraud.

### 2. Swiss Law Does Not Recognize Third-Party Beneficiaries to the Pleaded Contract

28. Swiss law recognizes the concept of a third-party beneficiary to a contract. CO Art. 112. But Swiss law restricts third-party beneficiaries to those to whom contractual performance is to run directly (cf. CO Art. 112 para. 1: emphasis added: "*A person who, acting in his own name, has entered into a contract **whereby performance is due to a third party** is entitled to compel performance for the benefit of said third party*"). In this instance, Bank Leu's performance was to run directly to Mr. Karoon only: Plaintiffs allege that Bank Leu agreed to assist Mr. Karoon in the establishment of a foundation having specific attributes.

29. Thus, while a Swiss court would recognize a timely claim by Mr. Karoon (or his estate) in contract, it would not allow a claim by the Plaintiffs as third-party beneficiaries of that contract.

### D. Statutes of Limitation

30. Even if a Swiss court would recognize any of Plaintiffs' claims, they would all be dismissed as time-barred.

31. Under Swiss law a breach of contract claim becomes time-barred ten years from accrual. Art. 127 CO. This time bar does not depend on knowledge of the facts and it is not tolled by reason of a continuing relationship with the breaching party. (*See, e.g.*, Däppen, Basel Commentary to the Swiss Code of Obligations, Art. 130 N 9.)

32. Here the Plaintiffs allege that Bank Leu provided Mr. Majid Karoon with organizational documents and otherwise facilitated the establishment of the foundation not later than 1989. It was in this manner and at this time, Plaintiffs allege, that Bank Leu breached its contract; and this is when the statute of limitation began to run. Art. 130 CO.

33.     Under Swiss law, therefore, any claims in contract expired in 1999.

34.     Plaintiffs' non-contract claims for breach of fiduciary duty, negligence, and fraud are all subject to a one year statute of limitation. The one year period began to run on the date when the injured party became aware of the alleged wrongful conduct and the identity of the party liable for it. Art. 60 para. 1 CO.

35.     By the allegations of the complaint, Mr. Karoon was informed of all relevant facts in 1989, when he was in possession of the documents that Plaintiffs claim manifest the alleged breach. Under Swiss law the one year statute of limitation began running at that time.

36.     In any event, Plaintiffs' non-contract claims are all subject to an absolute, 10 year limitations period, running from the date on which the loss or damage occurred, applicable without reference to Mr. Karoon's knowledge. Art. 60 para. 1 CO.

37.     Thus, all of Plaintiffs' claims were time-barred not later than 1999.

E.  **Swiss Courts are Available to Plaintiffs**

38.     CSAG and CSGAG as Swiss-organized and Swiss-headquartered entities are generally amenable to suit in Swiss courts. A Swiss court would entertain appropriate clams brought against either CSAG or CSGAG by the administrators of the estate of one of their former customers.

39.     To the extent that witnesses reside in Switzerland, a Swiss court adjudicating the Plaintiffs' claims in Switzerland would be empowered to compel witnesses located in Switzerland to testify and otherwise give evidence. Thus, to the extent evidence is required from former or retired employees of Bank Leu, Swiss courts are empowered to compel their participation. Art. 160, 170 of the Swiss Code on Civil Procedure ("CCP").

Pursuant to 28 U.S. C. §1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: Zurich, Switzerland
August 12th, 2015

_____
ANDREA MEIER

# WARTMANN & MERKER
RECHTSANWÄLTE · ATTORNEYS AT LAW

### DR. ANDREA MEIER, LL.M.

E-Mail: a.meier@wartmann-merker.ch

Partner
Born: 1974  |  Admitted: 2001
Languages: German, English, French

### AREAS OF EXPERTISE

Representation of parties before arbitral tribunals and Swiss courts in commercial matters, notably in cases related to industrial and infrastructure projects, banking, international trade, joint ventures, corporate liability, and insurance. Arbitrator in international commercial disputes. International legal assistance and enforcement of foreign judgments.

### EDUCATION

University of Zurich, Dr.iur. 2007
Harvard Law School, LL.M. 2005
University of Zurich, lic.iur. 1999

### PROFESSIONAL CAREER

senior associate (2010 to 2012)  and partner of Wartmann & Merker (since 2013)
associate and senior associate with an international business law firm in Zurich (2003 to 2010)
clerkship at district court (1999 to 2001)

### MEMBER

ASA (Swiss Arbitration Association): Member of the Board
ASA below 40: Co-chair
AIJA (International Association of Young Lawyers)
YIAG (Young International Arbitration Group)
ICDR Young & International
Zurich and Swiss Bar Associations

Fraumünsterstrasse 29
P. O. Box
CH-8022 Zurich

Telephone +41 44 212 10 11
Telefax +41 44 212 15 11
E-Mail office@wartmann-merker.ch



**WARTMANN & MERKER**
RECHTSANWÄLTE · ATTORNEYS AT LAW

## RECOGNITIONS                                                                                    Dr. Andrea Meier, LL.M.

Wartmann & Merker recognized by Chambers Europe 2014 as a leading Swiss law firm (Dispute Resolution: Litigation).

## PUBLICATIONS                                                                                    Dr. Andrea Meier, LL.M.

Do Lawyers Always Have to Have the Last Word? Iura Novit Curia and the Right to Be Heard in International Arbitration: an Analysis in View of Recent Swiss Case Law, ASA Bulletin, Volume 32, No. 3, September 2014 [together with Yolanda McGough].

Commentary on Article 43, Emergency Arbitrator, Swiss Rules of International Arbitration: Commentary, 2nd ed., Eds. Zuberbühler/Müller/Habegger, Schulthess, Juris, 2013.

Section on Multi-party Arbitration; Commentary on Articles 7–10 2012 ICC Rules; Commentary on Article 24 2012 ICC Rules, Commentary on Appendix IV 2012 ICC Rules, Arbitration in Switzerland – The Practitioner's Guide, Ed. Arroyo, Kluwer Law, 2013.

Lugano Convention on International Jurisdiction and Enforcement, Commentary [Lugano-Übereinkommen zum internationalen Zivilverfahrensrecht], ed. Anton K. Schnyder, Dike 2011, Commentary on Articles 25–30 and 59–60.

Arbitration World – Jurisdictional Comparison, Third Edition, Section on Switzerland, Section on Swiss Rules of International Arbitration, European Lawyer Ltd., UK, 2010 [together with Dr. Georg von Segesser and Alexander Jolles].

Cross-border Insurance and Reinsurance: Country Q&A Switzerland, PLC Insurance and Reinsurance Handbook 2010 [together with Dr. Martin Bernet].

In Good Times and in Bad: Termination of and Liability under Product Development Agreements [In guten wie in schlechten Zeiten: Ausstieg und Haftung aus Produktentwicklungsverträgen], AJP 2009.

At What Costs May a Football Player Breach his Contract? ASA Bulletin Volume 26, No. 3, 2008.

Joinder of Third Parties or the Need to (sometimes) Be Inefficient, Austrian Arbitration Yearbook 2008 [together with PD Dr. Nathalie Voser].

Joinder of Third Parties in International Arbitration [Einbezug Dritter vor internationalen Schiedsgerichten], Thesis, 2007.

## SPEAKING ENGAGEMENTS                                                                            Dr. Andrea Meier, LL.M.

«Emergency arbitrator and interim relief by state courts», local group of ASA and Zurich Bar Association, 18 November 2014, Zurich.

Co-organization of ASA below 40 seminar, Getting to know the industries – energy, construction, financial services, 7 November 2014, Zurich.

Moderator Table Session: «The different practices in witness testimony, notably in relation to the lawyers' (possibly diverging) ethics: can (or should) unity be achieved?» Co-Chairs' Circle 1st Global Conference, 19/20 September 2014, Berlin.

Co-organization of ASA Conference, Celebrating ASA's 40th birthday – Arbitration during the next 40 years: preparing for the challenge, 5 September 2014, Bern.

«The arbitral award: deliberation of the arbitral tribunal and the drafting of the award», Swiss Arbitration Academy – One Day Seminar, 29 August 2014, Zurich.

«In search of the smoking gun: document production and e-discovery», Workshop, AIJA 6th Annual Arbitration Conference, 12 to 14 June 2014, Vienna.

WARTMANN & MERKER
RECHTSANWÄLTE · ATTORNEYS AT LAW

## SPEAKING ENGAGEMENTS

Dr. Andrea Meier, LL.M.

Co-organization of ASA below 40 seminar, Court assistance in international arbitration – how to use it wisely and efficiently, 23 May 2014, Geneva.

Appointment and Challenge of Arbitrators in Ad Hoc Arbitration, YAAP Anniversary Conference, 12 December 2013, Vienna.

Co-organization of ASA below 40 seminar, The straight and narrow – legal and ethical rules applicable to counsel, experts and arbitrators, 8 November 2013, Zurich.

The Award / Recognition and Enforcement, VIS Moot School Switzerland, 2 October 2013, Zurich.

State courts or emergency arbitrator? ASA local group Basel, 27 June 2013, Basel.

Co-organization of ASA below 40 / ICDR Young & International seminar, The empty chair – arbitrating against absent respondents, 31 May 2013, Geneva.

Assistance to the Arbitral Tribunal, ASA Annual Conference, 1 February 2013, Zurich.

Emergency Arbitrator: Necessity or temporary fashion, local group of ASA and Zurich Bar Association, 26 March 2012, Zurich.

Extending the arbitration agreement to non- signatories: parent companies, affiliates, controlling individuals, guarantors and other third parties, ASA below 40 seminar, 21 October 2011, Zurich.

Dark sides of subcontracting: Multi-party and multi-contract arbitrations, AIJA Arbitration conference, 23 September 2011, Warsaw.

Moderator of first Arbitration Forum by ASA, March 2011, Zurich.