UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KAYVAN KAROON and                      :
KAMRAN KAROON, individually            :
and as Administrators of the Estate    :
of MAJID KAROON, and                   :   Civil Action No. 15-CV-04643-JPO
MAHIN D. KAROON,                       :
                                       :
    Plaintiffs,                       :
                                       :
    v.                                 :   **AFFIDAVIT OF KAYVAN KAROON**
                                       :   **IN OPPOSITION TO MOTION TO DISMISS**
CREDIT SUISSE GROUP                    :
AG and CREDIT SUISSE AG,               :
                                       :
    Defendants.                        :
_____        :

STATE OF NEW JERSEY:
                      SS
COUNTY OF BERGEN:

    KAYVAN KAROON, of full age, upon his oath deposes and says:

    1. I am one of the plaintiffs in this matter. I make this affidavit upon personal knowledge in opposition to the motion to dismiss of Credit Suisse Group AG and Credit Suisse AG ("Credit Suisse").

    2. Attached hereto as **Exhibit A** is a Listing by the Department of Financial Services of banking institutions registered with it.

    3. Attached hereto as **Exhibit B** is the following article from Bloomberg Business: *Credit Suisse to Stay at U.S. Headquarters in Manhattan*, January 14, 2014.

    4. Attached hereto as **Exhibit C** are pages from the Credit Suisse 2015 website.

    5. Attached hereto as **Exhibit D** is a New York Stock quote for Credit Suisse Group AG.

    6. Attached hereto as **Exhibit E** are pages from the Credit Suisse 2015 website.

    7. Attached hereto as **Exhibit F** are By-Laws that were sent to Majid Karoon.

1

8. Attached hereto as **Exhibit G** is a June 16, 1997 Letter sent by Majid Karoon to Credit Suisse at 11 Madison Avenue, New York, NY 10010.

9. Attached hereto as **Exhibit H** is various correspondence between Kayvan Karoon and Credit Suisse.

10. Attached hereto as **Exhibit I** is a New York Court Order.

11. Attached hereto as **Exhibit J** is a Summons issued in the London High Court of Justice.

12. Attached hereto as **Exhibit K** is a Request for Judicial Assistance.

13. Attached hereto as **Exhibit L** is an August 18, 1998 New York Court Order.

14. Attached hereto as **Exhibit M** is correspondence and related documents between Mahin Karoon's counsel and Bank Leu/Credit Suisse.

15. Attached hereto as **Exhibit N** is a Second Amended Divorce Judgment.

16. Attached hereto as **Exhibit O** is correspondence between Kamran Karoon and Herbert Batliner (or his office).

17. I am the son of Majid Karoon, as is my brother Kamran Karoon.

18. My father began his banking relationship with Bank Leu in Switzerland in the early 1970's, while my father was working in Iran. While he was in Iran, upon information and belief my father wired tens of millions of dollars to Bank Leu. My father was a business associate of the Shah of Iran, and he managed the Shah's personal oil tankers and money derived therefrom. My father also managed one of the world's largest fleets of oil super tankers, all bearing the first initial of his last name. His personal wealth was estimated at several hundred million dollars by the mid-1970's.

19. Upon the revolution in Iran towards the end of 1978, our family had to leave Iran. My mother, Mahin Karoon, my brother, Kamran Karoon and I ultimately became United States citizens, and we became residents of New York.

20. At times I would ask my father what would happen to the family if he were to die. He always responded that all I would need to do is bring a copy of his death certificate to Bank Leu, and Bank Leu would know what to do. He told me that everything had been arranged with Bank Leu, and that it would take care of everything.

21. I now know what my father meant when he told me that everything had been arranged by Bank Leu. From the papers I have now seen it is apparent that Bank Leu acted **as attorneys** for Majid Karoon. As part of his estate planning, its legal department advised him and created the Orleon Foundation (the "Trust") for him in 1989. *See* **Exhibit F** hereto and Exhibits to the Complaint.

22. From 1989 until my father's death on February 10, 2002, my father never told me that any other arrangements had been made or that upon his death I should not contact Bank Leu. Hence, until his death my father continued to believe that Bank Leu would take care of our family upon his death. It is apparent to me that Bank Leu concealed from him the fact that he had claims to assert against it.

23. My mother and father were involved in a New York divorce proceeding that was begun in 1997. In connection with that proceeding, my mother's counsel did everything possible to obtain information form Credit Suisse about my father's assets and the Trust. *See* Correspondence, **Exhibit M**. Counsel compelled my father to write to Credit Suisse at its United States headquarters at 11 Madison Avenue in New York, to request that all his account statements and summaries be sent to my mother's counsel. *See* **Exhibit G.** Counsel for my mother obtained a New York Court Order restraining the disposition or transfer of any assets, funds or trusts in the name of Majid Karoon or any other entity over which he has control or any nominee located **anywhere in the world.** *See* **Exhibit I** (emphasis added). Counsel served a Summons in the High Court of London requiring Credit Suisse First Boston in London to turn over all documents and books *regarding the Orleon Foundation*, my father

and related persons and entities. *See* **Exhibit J**. Counsel served a Request for International Judicial Assistance upon Swiss Authorities pursuant to the Hague Convention, requesting all bank records of Bank Leu relating to my father. *See* **Exhibit K**. Counsel obtained a New York Court Order requiring Bank Leu to turn over all books and records in Switzerland or anywhere in the world concerning my father or any entity over which he has or had control, or any nominee for him. *See* **Exhibit L**.

24. Neither the New York Court Orders, the Summons in London, the Request for Judicial Intervention in Switzerland, nor any other efforts of counsel resulted in Bank Leu or Credit Suisse providing documents or any information at all concerning the Trust/the Orleon Foundation.

25. Bank Leu and Credit Suisse actively concealed all such records and information from my family. Indeed, on July 21, 1998, my mother's counsel wrote to counsel for Credit Suisse First Boston (now Credit Suisse) to complaint that it has refused to provide documents, and that "[i]t appears that your client is persisting with the conduct which we have all heard about recently from newspaper articles and television programming with respect to assets hidden and held by Swiss banks for Nazi Germany." *See* **Exhibit M**. Bank Leu and Credit Suisse concealed my father's assets and documents and all information concerning the Trust/the Orleon Foundation from my mother even though she was awarded sixty-five percent of my father's assets by the New York Court. *See* **Exhibit N**.

26. Upon my father's death in 2002, my brother Kamran and I, as administrators of our father's estate, immediately attempted to obtain information from Bank Leu and later Credit Suisse concerning our father's accounts and financial affairs, and we were stonewalled in our efforts. *See* Letters, annexed as **Exhibit H**.

27. On November 5, 2002, I wrote to Credit Suisse to ask, among other things: "Where did the assets of our late father transferred to"? *See* **Exhibit H**. On December 6,

4

2002, I wrote again to Credit Suisse to demand information and a thorough investigation about any Trusts or Anstalds. *Id.* On December 6, 2002, I again wrote to Credit Suisse to complain that no information had been provided concerning any Trusts or Anstald's that my father may have created with Bank Leu. *Id.* On February 24, 2003, Credit Suisse responded to my December 6, 2002 letter, but failed to even address my request for information concerning any Trusts or Anstalds. Because my continuous attempts to obtain information concerning the trust were stymied by Credit Suisse, in 2007 I even retained a Lichtenstein attorney to attempt to obtain information concerning Majid Karoon's assets.

28. My efforts to obtain information concerning the Trust created by Bank Leu/Credit Suisse have yielded nothing. Credit Suisse has concealed all information concerning the Trust. Indeed, recent efforts by my counsel to obtain information also yielded no results.

29. It was only on July 16, 2014 that my family finally learned that we have claims to assert against Credit Suisse concerning the Trust, because it was only then that counsel for the Trust finally informed us that "we are neither in a position to confirm the existence or the non-existence of any legal entity nor to furnish you with any data or information." *See* **Exhibit O.** Only upon receiving this letter did we learn that a fraud had been committed by Bank Leu.

30. I understand that Credit Suisse now contends that the Court lacks jurisdiction over it. I note, however, that at the time Bank Leu created the Trust in 1989 my father, my brother Kamran, my mother Mahin Karoon and I were all New York residents and United States citizens. Bank Leu knew that my father resided in New York because it communicated with him directly in New York. *See, e.g.*, **Exhibit F** to the Complaint. It also had to have known that the beneficiaries of the Trust—my brother, my mother and myself—all resided in New York, because in its August 17, 1998 letter to my father (**Exhibit C** to the

Complaint at 2), Bank Leu asked him for the addresses of the beneficiaries. Moreover, from the research I conducted, Credit Suisse AG undeniably uses real property within the State of New York, because it rents office space at 11 Madison Avenue in New York. Moreover, it appears that Credit Suisse Group AG also rents space at 11 Madison Avenue in New York for its United States headquarters. *See* **Exhibit B**. In any event, Credit Suisse Group AG admittedly has subsidiaries that use/rent real estate in New York.

31. Credit Suisse asserts that plaintiffs have not distinguished between Credit Suisse AG and Credit Suisse Group AG. Credit Suisse itself, however, does not distinguish between Credit Suisse Group AG and Credit Suisse AG, and considers all offices to be those of "Credit Suisse." *See* **Exhibit C and E**. Moreover, although the Hasdenteufel Declaration states that there are but approximately **100 persons** at the 11 Madison Avenue location in New York, Credit Suisse's 2015 website states that there are **6,500+ employees** at that location, **and close to 10,000 employees in New York**. *See* **Exhibit E**.

32. Credit Suisse Group AG and Credit Suisse AG do business under the trade name ""Credit Suisse," which is copyrighted by "Credit Suisse Group AG and/or its affiliates." *See* **Exhibit C**. New York City is said by Credit Suisse to be "the regional headquarters of Credit Suisse in the Americas." *Id*. Interestingly, the presence of Credit Suisse in New York is said to be "spread out over four different office locations: Eleven Madison Avenue (6,500 + employees), One Madison Avenue (2,200 employees), 315 Park Avenue South (900+ employees) and 12 East 49th Street (40+ employees)." *See* **Exhibit E**. Credit Suisse goes on to state that "[t]ogether, close to 10,000 employees cover our three primary businesses: investment banking, private banking and asset management, as well as our Shared Services and support functions." *See* **Exhibit C**.

33. One thing is certain: Credit Suisse AG operates and conducts a branch headquarters in New York. Credit Suisse AG registered and obtained a license from the

6

Superintendent of the Department of Financial Services, and appointed the Superintendent as agent to accept service of process. *See* **Exhibit A**. New York is the principal forum in which Credit Suisse AG does business in the United States.

34. As regards Credit Suisse **Group** AG, according to the Hasdenteufel Declaration it only operates in New York through subsidiaries. Credit Suisse Group AG, however, identifies itself with all offices in New York (*See* **Exhibit E)**, and is said to have its United States Headquarters in New York at the same address as Credit Suisse AG (11 Madison Avenue). *See* **Exhibit B**. Indeed, Credit Suisse Group AG is said to have signed a 20-year lease "to stay at its Americas headquarters, taking less space in the tower at 11 Madison Ave. in Manhattan." *See* Bloomberg Business, *Credit Suisse to Stay at U.S. Headquarters in Manhattan*, January 14, 2014. **Exhibit B**. Hence, the North American headquarters of Credit Suisse Group AG appears to be located at 11 Madison Avenue, New York, NY.

35. I also note that Credit Suisse Group AG, which is traded on the New York Stock Exchange (**Exhibit D**, touts itself as operating "an integrated bank, combining our strengths and expertise in our two global divisions. ... Our divisions are supported by our Shared Services functions, which provide corporate services and business solutions while ensuring a strong compliance culture." *See* Credit Suisse Online Site, annexed as **Exhibit C**. Hence, Credit Suisse Group AG acknowledges that its activities and those of Credit Suisse AG are "integrated."

36. My family specifically chose New York as a forum to assert our claims against Credit Suisse because (i) we were residents of New York and United States citizens at the time the Trust was created and we were injured in New York by the tortious conduct of Bank Leu/Credit Suisse, and (ii) it would be a significant financial hardship for my family to have to hire a Swiss attorney and litigate in Switzerland. It would be a significant financial hardship precisely because Credit Suisse's tortious conduct has deprived my family of its

7

assets. It certainly would be easier and less of a financial burden to cause the three witnesses identified by Credit Suisse to fly once to New York than to have my entire family fly to Switzerland—most probably on numerous occasions—if the case were to be litigated there. Moreover, the documents at issue in this case mainly created by Bank Leu and must be presently maintained by Credit Suisse, and they mainly will consist of the legal file of Bank Leu and therefore should not be voluminous.

Sworn and subscribed to before me
this 21st day of September, 2015.

_____
A Notary Public of the
State of New Jersey
WENDY R. BRANNIGAN
A Notary Public of New Jersey
My Commission Expires APRIL 26, 2019

_____
Kayvan Karoon